The issue before the Court is whether or not there was a valid waiver of the right to counsel under Ferretta and the formulation that this circuit, which is consistent with the U.S. Ferretta waiver, that the defendant must demonstrate that he understands the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation. Didn't the judges conducting the Ferretta hearings make clear to your client that once he was approved to represent himself, that if he changed his mind, he could go back to representing counsel? Well, that's probably— Yes or no? Yeah, I assume the judge made that clear, but obviously, not only didn't change his mind, but he continued to persist in his assertion that his conflation, as it were, of the supervised release charge and the 18 U.S.C. 2113a charge, the indictment, all the way up to June 6 of 2013, when he was filing motions in connection with his sentencing. So he had insisted— That was when he received a copy of the—or was allowed access to the pre-sentence report which recommended that he be treated as a serial offender? Correct. So at that point, he knew, if he didn't know it before, that he was subject to sentencing enhancement, correct? Well he argued— Did he have a yes or no to my question? Apparently, he did not know that. Apparently, he knew the court wanted to do that. He held an objection to the pre-sentence report, didn't he? Right, yes. So he knew enough to do that. Correct. We can't assume that he read the pre-sentence report and saw the recommendation? No, we could assume he did read it and he did see the recommendation. But he did not request to go back to representative counsel? I'm sure, had he made that request, the court would have taken it very seriously at that time. How does that leave us? Well, what it leaves us with is the fact that at no time, including after he read the—his objections to the pre-sentence report were that, as he pointed out, he had been in Document 88. He insisted that his first appearance on the indictment had been in September. He wasn't even indicted until November of 2012. Even at that point, he was not understanding the distinction between the two proceedings. So when the court asked me, did he read it, I say, yes. The court asked me, did he understand it, it's clear to me he did not understand it because otherwise he wouldn't have made the objections that he made. He, at one point, moved to withdraw his guilty plea, correct? Correct. And then changed his mind? Yes. Is there any indication as to why he changed his mind? I have no idea why he changed his mind. But the ground for his seeking to withdraw was that he didn't understand that he faced the career offender enhancement on the main case, yes? Correct. And the government opposed that, right? Yes. Did they give a ground? To be honest, I don't recall what, if anything, the government argued. All right, I'll ask you when they stand up. But it remains clear, I think, on the record that he did not ever understand, and that's the other basis, that he didn't understand the nature of the proceedings against him. And I think it's noteworthy that the Sixth Amendment refers to the requirement that a defendant be informed of the nature and cause of the accusation. He clearly understood that this had something to do with a bank robbery, but he also clearly never understood what the nature of the two proceedings he was facing were. With respect to the career offender issue, first of all, as I understand it, there was never any reference to the guidelines made at the time of his waiver by either the magistrate judge or the district court judge. Is there any case law that requires that? There's no case law that specifically requires it, although some cases from the Third Circuit were cited in the appellate's opening brief, which suggested that it would be appropriate to do that. There's nothing that I'm aware of from this circuit. He was advised at the time of the Feretta hearing that he faced 20 years, correct? Correct. Yes, he was advised. Received 15 and a half? Correct. Counsel, I'm just wondering from a practical standpoint, when someone is going to waive their right to counsel at the arraignment, what exactly would you envision the magistrate being able to tell them at that point about what their potential guidelines exposure was? Well, at a minimum to say there are these things called the guidelines that the courts are required to look at the guidelines and the courts are required to take them into consideration. But this was a little different than just an ordinary case because while he's conflating the supervised release case so that every time he talks about the indictment he's also talking about the supervised release case, that puts everybody on notice that the supervised release came from a conviction for bank robbery. So in this case, it seems to me the magistrate judge and the district court judge should have been on notice that there's a possibility of a career offender guidelines as opposed to just a general proposition that guidelines are important and the defendant should understand it. I think there's specific facts in this case that should have alerted the court to warn him. So the rule you would have our court adopt is what? That as long as there are, I don't know, sufficient facts to alert a competent magistrate that somebody might be exposed to career offender enhancements, that's when there's an obligation to advise them of that? I would think so, yes. If it's clear that the potential exists for career offender guidelines, just as, for example, the court clearly would be obliged to advise the defendant of the mandatory minimum, not withstanding the fact that maybe under a safety valve the defendant wouldn't actually face the mandatory minimum. In effect, this has been the law in the Third Circuit since 2006, yes? Correct. And are you aware of any difficulties they've had in giving this advice to someone who wants to weigh in? I am not aware of any difficulty. I assume they just give it to everybody, right? I think as a general proposition, it would be appropriate to give, if the defendant's going to understand the possible penalties, he needs to understand at a minimum that there are things called the guidelines and that they'll be considered. I think where particular facts give rise to the high possibility or probability of a particular guideline being invoked, that ought to be brought out in the Frederick. And I gather it obviously wouldn't stop with the career offender enhancements. I mean, you would have – there are just so many different guideline provisions that can jack up a sentence quite a bit. And I guess you're saying that as long as there's a hint that one of those enhancements might apply, then the magistrate has this obligation to advise the defendant about that possibility? That just strikes me as a totally unworkable rule. Well – I think there was more than a hint in this case. Wouldn't most of the guideline calculations be apparent from the nature of the indictment? Most of them would be, yes. So it – I want to ask the government, but I'm having difficulty seeing why. It seems to have worked in the Third Circuit. I don't see why it couldn't work here. Thank you. May I reserve the other minutes? Of course.  Let's hear from the government. We'll give you a couple minutes for rebuttal. Good morning. Susan Gray on behalf of the United States. I think it was your question, Judge Rakoff, and I want to go right to it, and that is when he moved to withdraw his plea after seeing the presentence report, and then the Court may recall he was specifically asked, do you want to go forward with the withdrawal? And he said, no. I overreacted when I saw the presentence report. And I really – what I really want to do is I want to get a conditional plea. I want to keep the plea I have. I want to keep my guilty plea, but I just want to make it conditional because I want to preserve the issues for appeal.  That's Mr. Rice addressing the Court. Does that answer the question? Well, yeah, but let me put a more basic question. First, what do you take to be the reason why a court has to advise someone who is waiving counsel of the maximum that they face? Your Honor, I think the Court, and if I have the Kate Rice in the Ballot case, explained that it's a risk assessment for the defendant. He is entitled to know what's the maximum penalty I can face. So the real risk, as we all know, it's a rare case where the maximum is imposed, particularly in the bank robbery situations. The real risk he faces is the guideline calculation, and most especially the career offender, which hugely increases his exposure. And moreover, there's nothing to indicate that he would have had any prior experience in representing himself with respect to career offender because none of the previous bank robberies that he involved in had involved a career offender calculation. So why wasn't it critical that he be told, now, before you undertake to represent yourself, don't you know that you face a huge possible enhancement under the career offender, and do you really feel you're competent to represent yourself in that respect? Your Honor, I understand that the Third Circuit has adhered to that position. Asking in the abstract. But here's why, for a couple of reasons. Number one, it's this Court recognized in Arendando that at the time of the waiver of counsel, at the change of plea, even at trial, a district court is not going to know the full extent of the defendant's criminal record. And I think the fact that as we all know from years of practicing with the guidelines, even though they're now discretionary, it's a complicated business. The Eleventh Circuit recognized that in Kimball. And so to ask at the very end, in the concurring opinion, they state, we're very concerned about too much of a verbal minuet here, that it might discourage the defendant from proceeding with self-representation. And I think we always have to keep in mind that this is a very near- Sotomayor, isn't the law already designed to discourage people from representing themselves because they get into trouble? And as in this very case, don't we tell in the abstract, tell the defendant, you know, you're undertaking something that you're not really well experienced to undertake. You don't have, you're not an experienced criminal lawyer. All those things are explained now. So I, and they're all designed to show the risk involved and his inability to meet those risks. He has the constitutional right to still go ahead. Here, the single biggest risk, by far, as a practical matter, was not explained to him. Your Honor, I think the case law doesn't support that in this circuit. And I think that this circuit has rejected repeatedly, it's followed Tovar, that has rejected a specific script, and which said he's to be informed of the general circumstances and not the specific. And that's a recognition, as the Court recently did in 2014 in Arradondo, that most often district courts don't know what exactly what his exposure is. And here's the other problem, Your Honor, and I think this is the significant one. If she had warned him, you could be facing a career offender guidelines, and been wrong, and he had not represented himself, we'd be here arguing about whether or not that unfairly discouraged him. And I think Ferreira, it's important to keep in mind that Ferreira was the one who said that. With respect to, there is a possibility that you may face, given the charges here and what I've heard about your prior career, a career offender, and that will very substantially increase your guideline range by several hundred percent. She doesn't have to commit to say you will, for sure, be facing it. Just point out the very real risk that it's a possibility. But at that point, Your Honor, the court doesn't have a PSR. Essentially what he is proposing is asking this Court in this circuit to expand the Ferreira inquiry. Do you think after 30 years of experience with the guidelines, most judges don't know what the guidelines are or know what the career offender guidelines are? True, Your Honor, but they won't know the defendant's prior record. And in this instance, we're confronted with a defendant with 40 years of criminal activity. And so where does it stop? As Judge Watford asked, where do we draw the line? Is it career offender? Is it you might be a leader? Is it you might get acceptance of responsibility? This is a slippery slope. And I think that the defendant here can put the --"is asking you to expand the law," but he can point to no error under this circuit's case law in this Ferreira inquiry. He was informed of the nature of the charges. He was informed of the penalties. And he was informed of the dangers and disadvantages. But let me ask you this question to make sure I have the law straight. In the Rule 11 guilty plea context, right, is the defendant required to be told at that point that he might face a significantly enhanced sentence under the career offender provisions? I don't know the answer to that question. I do know that the Rule 11 inquiry, it requires that he be advised that the Court will be using the guidelines. And you must be told of both the maximum sentence and a mandatory minimum sentence. But I'm not aware of any cases that say in that context, you must then, in addition to being told that there are these things called the guidelines that will govern your sentence, that you must be told, and, sir or ma'am, you face a particularly severe enhancement, so you better think about that long and hard before you decide to give up your right to go to trial. And it strikes me as an odd regime if we don't require it in that context, where you're talking about the person giving up, basically ending the case for themselves, that we would say at the very outset of the case to decide whether you want to waive counsel. Sotomayor Sorry to put you in the middle of this. It's really apples and oranges. At the guilty plea, he is being informed of what Rule 11 requires that he be advised of what Rule 11 requires, but there's no inquiry as to whether he is capable of representing himself. That decision is made when he applies to represent himself. Sometimes it occurs before the guilty plea, sometimes after the guilty plea, sometimes there's no guilty plea. But the purpose of the inquiry is whether he is capable of representing himself, given, if you will in this case, the complexity of the guidelines and their huge importance. It's totally different from Rule 11. It's why he would have had no reason to seek to withdraw his plea until later on he became aware that, whoops, I'm facing this career offender, what do I know about that? But, Your Honor, I think it's telling. When he had an opportunity to withdraw his plea, he did not. So to the extent that, first, I disagree that he didn't understand the risk. Certainly shows he moved to withdraw his plea. Yes? He moved to withdraw his plea. Correct, Your Honor. And then he withdrew the note. And then he changed his mind. So, by the way, it occurred to me after reading the record here, has anyone ever done a competency hearing of this fellow? Pardon me? No, Your Honor. One was never requested. I think it's important to keep in mind that Judge ---- Because he certainly doesn't ---- Pardon me? He didn't impress me as maybe being the most mentally stable person ever to come down the road. I think, Your Honor, during the sentencing, at the conclusion of the case, the Court found that he was a very bright person, that he had understood legal concepts. But she described him as a bit of a character, and his own attorney at sentencing described him as a bit of a pill. It's clear that he was a very active litigant. He was an active litigant. And in his first case, Judge Wilken had two years to observe him when she allowed him to represent himself. She observed him ---- she allowed him to represent himself again in 2011. And then in this instance, I see I'm out of time, if I may just finish, Your Honor. During the Ferretta hearing and then at the subsequent Ferretta hearing, they were able to observe that he clearly understood various ---- the proceedings and the concepts. I was not able, Your Honor, to address the nature of the charges. I would answer any questions on that particular issue. Just one quick question. Did you happen to research what the rule was in all circuits on this issue? No, I didn't, Your Honor. I did do a survey of the cases, and it looks as if the Third Circuit is the only one that requires any information be provided about the sentencing guidelines themselves. Thank you. And just to follow up, I don't think we know how that has worked out in the Third Circuit. I'd ask the question of Ferretta. It's presumably working well enough that they haven't changed their rule. So thank you very much, counsel. I appreciate your argument. Let's put two minutes on the clock for counsel, for the defendant. Thank you. Just two points. First of all, the government cited Arundando, but Arundando actually itself cited the United States v. Keene, saying that this circuit had invalidated a waiver of counsel where there was no indication that the defendant was aware of the enhanced penalty he faced as a result of his prior convictions under the armed career criminal provisions of 18 U.S.C. 924E. It's a slightly different career criminal provision, but nevertheless, Arundando then went on basically to invite this very appeal because it said that under the habeas rules, that the state habeas petitioner wasn't entitled to relief, but that the result might be different on a direct appeal. And the other question was about the motion to withdraw the plea. He was unrepresented at that time. I mean, it seems to me that if it was error, and it's the government's burden to prove the validity of the waiver, if it was error to take the waiver, then the fact that he never ameliorated that by saying, okay, you know what, I made a mistake, I would like a lawyer, doesn't vitiate the error. The error still remains and basically permeates the record until the judgment in this case. So if there are no questions. Okay. Thank you. Thank you very much, counsel. The case just argued will stand submitted.
judges: Rakoff, Hawkins, Watford